*568 Order, Surrogate’s Court, New York County (Nora S. Anderson, S.), entered on or about January 30, 2013, which construed formula clauses in trust agreements relating to two grantor retained annuity trusts (GRATs) to require that the remaining assets in the GRATs pass in equal shares to grantor’s three children, unanimously affirmed, without costs.
This appeal requires us to resolve two competing interpretations of two GRATs that grantor Janet Fisher (Janet), the mother of petitioner Nancy Fisher Kirschner (Nancy) and respondent Charles Fisher (Charles) established in 2009 and 2010.* The GRATs provided for annuity distributions to Janet during the two-year terms of the trusts, and alternatively contemplated the disposition of the assets remaining in them if she survived the terms, or did not, as follows:
“(C) Upon the expiration of the Trust Term, the Trustees shall distribute all of the remaining principal and ... all income of the trust accrued or on hand ... as follows:
“(1) If the Grantor is then living, such property shall pass to the Grantor’s children NANCY FISHER KIRSCHNER, CHARLES A. FISHER AND BARBARA SNOW, in equal shares if all of them are then living . . .
“(2) If the Grantor is not then living, the remaining trust property shall pass as follows:
“(a) A fractional share of the trust property, the numerator of which is equal to the amount of said trust property which is includible in the Grantor’s gross estate for Federal estate tax purposes, and the denominator of which is equal to the value of the entire trust property, as finally determined in the Federal estate proceeding in the Grantor’s estate, shall pass to the Grantor’s estate.
“(b) The balance thereof shall pass to the Grantor’s children NANCY FISHER KIRSCHNER, CHARLES A. FISHER AND BARBARA SNOW, in equal shares if all of them are then living.” (Emphasis added.)
Janet died on December 28, 2010, before the GRATs expired. Accordingly, we are concerned only with section (C) (2). That section is, on its face, quite straightforward. Because Janet died before the GRATs expired, whatever fraction of the assets in the GRATs is “includible in the Grantor’s gross estate for Federal estate tax purposes” passes into the estate, and any remainder is distributed equally to the three children. However, *569 the federal estate tax expired in 2010, the year of Janet’s death. Although Congress reinstated the tax shortly before Janet’s death, it permitted executors of estates of individuals who died in 2010 to elect to pay no estate tax. Nancy and Charles, Janet’s executors, made that election. Nevertheless, they disagree on its impact on the operation of the GRATs.
Charles maintains that, because the estate paid no estate tax, the fraction of the assets in the GRATs “includible in the Grantor’s gross estate for Federal estate tax purposes” pursuant to section (C) (2) (a) was zero, and that as a result the “balance” of the assets pursuant to section (C) (2) (b) is everything in the trust. Nancy, on the other hand, maintains that the fraction of the assets in the GRATs “includible in the Grantor’s gross estate for Federal estate tax purposes” is what would have been paid in estate taxes had she and respondent not elected to forgo paying the tax. For this she relies on EPTL 2-1.13 (a) (1). That section, the title of which states that it applies only to “[c]ertain formula clauses,” provides: “If by reason of the death of a decedent property passes or is acquired under a beneficiary designation, a will or trust of a decedent who dies after December thirty-first, two thousand nine and before January first, two thousand eleven, that contains a bequest or other disposition based upon the amount of property that can be sheltered from federal estate tax by referring to the ‘unified credit’, ‘estate tax exemption’, ‘applicable exclusion amount’, ‘applicable exemption amount’, ‘applicable credit amount’, ‘marital deduction’, ‘maximum marital deduction’, ‘unlimited marital deduction’, ‘charitable deduction’, ‘maximum charitable deduction’ or similar words or phrases relating to the federal estate tax, or that measures a share of an estate or trust based on the amount that can pass free of federal estate taxes, or that is otherwise based on a similar provision of federal estate tax then such beneficiary designation, will or trust shall be deemed to refer to the federal estate tax law as applied with respect to decedents dying in two thousand ten, regardless of whether an election is made not to have the federal estate tax apply to a particular estate.” EPTL 2-1.13 therefore requires that “[c]ertain formula clauses” be calculated “regardless of whether an election is made not to have the federal estate tax apply to a particular estate” (EPTL 2-1.13 [a] [1]). Thus, if the statute applied, it would calculate the amount “includible” as the entire estate.
It is not surprising that the parties take the positions they do. Nancy wants all of the GRAT assets to pass into the estate, because Janet’s will bequeathed to her and her sister 45% of *570 the assets in the estate, but only 10% to Charles. This was to adjust for certain gifts Janet’s husband had made to Charles during his lifetime. Charles, on the other hand, wants section (C) (2) (b) to control all of the GRAT assets because then he will get a share of them equal to those of his two sisters.
Charles has the better of the two arguments, because EPTL 2-1.13 (a) (1) is inapplicable and section (C) (2) of the GRATs is unambiguous despite the 2010 expiration of the estate tax. In interpreting a statute, a court “should attempt to effectuate the intent of the Legislature, and where the statutory language is clear and unambiguous, the court should construe it so as to give effect to the plain meaning of the words used” (Patrolmen’s Benevolent Assn. of City of N.Y. v City of New York, 41 NY2d 205, 208 [1976] [citations omitted]). “Generally, inquiry must be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision as well as its legislative history” (Matter of Sutka v Conners, 73 NY2d 395, 403 [1989]).
A review of the legislative history of EPTL 2-1.13 (a) (1) reveals that its purposes were quite narrow and that it was primarily a legislative fix enacted to prevent the thwarting of the well-intentioned estate plans of those who, in good faith reliance on the existence of an estate tax in 2010, bequeathed significant portions of their estates to persons other than their spouses, so they could take full advantage of the spousal estate tax exemption. For people who died in 2010, the expiration of the estate tax not only nullified oft-utilized tax planning strategies, but threatened to leave their spouses with less money than they otherwise would have received, and with no concurrent benefit. The legislature, by enacting EPTL 2-1.13 (a) (1), saved these estate plans by permitting their creators to adopt the fiction that they paid an estate tax, even if they did not.
There is no evidence here that the GRATs at issue were created with the specific goal of taking advantage of spousal exemptions based on the federal estate tax, or were structured for similar purposes. Further, the legislature did not contemplate that the repeal of the tax law would implicate the formula clause at issue here. The clause here references federal estate tax laws not to minimize tax liability, but to account for an uncertain value to include in the taxable estate upon death of the grantor, to be distributed in proportion to each of the beneficiaries’ taxable share of the estate (see EPTL 2-1.8 [a]; Matter of Gilligan, 247 AD2d 383, 383-384 [2d Dept 1998]). Thus, contrary to petitioner’s assertions, the GRATs’ reference to the amount of trust property “includible in the Grantor’s gross estate for *571 Federal estate tax purposes” is not analogous to the “amount that can pass free of federal estate taxes, or that is otherwise based on a similar provision of federal estate tax,” as EPTL 2-1.13 (a) (1) recites.
The plain language of the statute also militates against petitioner’s argument. By its terms, EPTL 2-1.13 (a) (1) applies only to property that passes “by reason of the death” of a decedent who dies in 2010. Here, the GRAT remainders did not pass when Janet died or as a result of her death. To the contrary, the GRAT remainders were going to pass to the beneficiaries regardless of whether Janet died during the terms of the GRATs, and her death affected only their proportionate shares. Moreover, the plain language of the trust agreement, which states that Janet expected her GRAT to be divided in equal shares if it was not subject to the estate tax, advances the stated purpose in the legislative history, “[t]o preserve the form in which most testators expected their estates to be divided prior to the unexpected repeal of the Federal estate tax” (Assembly Mem in Support, Bill Jacket, L 2010, ch 349 at 9, 2010 McKinney’s Session Laws of NY at 1924). The trust agreement similarly provided that the entire balance should be divided equally if she had survived the two-year term.
Because EPTL 2-1.13 (a) (1) is not applicable in light of the parties’ election not to pay the estate tax, Surrogate’s Court correctly held that the amount “includible” in grantor’s gross estate for federal estate tax purposes is unambiguous and readily calculable as zero. “[WJhere the language employed is so clear and unmistakable as to convey only one meaning even when read in its proper setting[,] . . . the intent evidenced by the language is given effect without reference to external circumstances or rules of construction” (Matter of Fabbri, 2 NY2d 236, 244 [1957]).
Accordingly, Surrogate’s Court need not have considered any extrinsic evidence of any contrary intent, nor was there any such evidence, as the documents petitioner offered merely contain counsel’s cautionary advice to grantor that if she died before expiration of the term of the trusts, the balance of the trusts would be included in her taxable estate for purposes of calculating any estate tax. Indeed, if grantor wanted the balance of the GRATs to pass in disproportionate shares to her children regardless of whether the estate tax applied, she could have drafted the relevant subparagraph to require such unequal, rather than equal, distribution. Instead, as Surrogate’s Court noted, she opted for an unambiguous distribution scheme under which her children would share equally in the remainder *572 of her GRATs unless the trust property was subject to federal estate tax.
Concur—Mazzarelli, J.E, Saxe, Moskowitz, BeGrasse and Gische, JJ.

 A third child, Barbara Snow, is not a party to this appeal.